## Barnet *et al.* *versus* Deturk.

*Construction of  Will.—Power to sell in  Will when executed,  effects of o n*
*Executory Devise.*

A testator, by will dated in 1826, gave and bequeathed land to his son S., " his heirs and assigns for ever," subject to the payment of a sum of money to a daughter, adding: " if, however, S. should die without issue, then the land to descend to and vest in three other sons named, provided S. should not make sale of it, but if the said S. should sell the aforesaid property, he may grant and assign it as he likes." In January 1834 S. and wife, by deed purporting to be for a valuable consideration, sold and conveyed the land to an uncle, who in May following, by endorsement on the deed, for a valuable consideration assigned it and the land back to S.: the consideration for both deeds were in fact only nominal: S. then held the land until he died, leaving no widow nor issue, having first devised it to D., against whom the brothers of S., the first devisee, brought ejectment. *Held,*

1. That by the sale to his uncle, S. had done what the testator required, the effect of which was to vest in him the same estate as was given him by the first item in the will:

2. That the sale and conveyance of January 1834, though for a nominal consideration, divested the estate limited at his death to his brothers : and

3. That the reconveyance to S. of May 1834 vested in him the fee simple of the land, and that he by his will had transmitted a valid title to his devisee.

ERROR to the Common Pleas of *Berks county*.

These were two actions of ejectment, brought February 7th 1861, by John Barnet, Daniel Barnet, and Samuel Barnet, against Jeremiah Deturk, the former to recover a tract of land in Maiden Creek township, Berks county, containing twenty acres and ninety-three perches, and the latter for a tract of land in the same township, containing thirty-six acres and thirty-four perches.

[Barnet *et al. v.* Deturk.]

The actions were tried together in the court below, and after the evidence had been given in, by agreement of the parties both cases were submitted to the court below, upon the facts and the law.

The material facts were as follows:—Stephen Barnet, the elder, made his last will and testament, dated the 27th day of May 1826, which was proved in the register's office on the 18th of July 1826, in which he devised as follows:—"I give and bequeath unto my son Stephen Barnet, his heirs and assigns for ever, the following messuage, tenement, or two tracts of land," describing said tracts of land by courses and distances, one containing thirty-six acres and thirty-four perches, and the other twenty acres and ninety-three perches. He also directed that Stephen should pay out of said two tracts of land unto the · testator's daughter Catharine, and her heirs, the sum of 150*l.*

In a subsequent clause in the will there was the following provision:—"It is my will, and I do ordain, if my son Stephen Barnet should die without issue or children, that the messuage, tenement, or two tracts of land (bequeathed in the former part of this my will to him the said Stephen), shall vest and descend to my other sons, viz.: John, Daniel, and Samuel, or to their heirs, and not to any of my daughters, or their heirs (provided the said Stephen should not make sale of the aforesaid property), *if he the said Stephen should sell the aforesaid property, he may grant and assign as he likes.*

The words in *italic* are interlined in the original will, and so noted in the attestation. On the 22d day of January 1834, Stephen Barnet and wife made, executed, and delivered a deed for said lands to Daniel Barnet in fee simple in the usual and common form, for the consideration of $6000.

On the 22d day of May 1834, Daniel Barnet executed and delivered a deed for said lands to Stephen Barnet in fee simple, in the usual and common form, for the consideration of $6100; both deeds were acknowledged on same day, but no money was paid for either conveyance.

Stephen Barnet being at the time in possession of these lands, made his last will and testament, dated the 2d day of July 1847, which was duly proved before the register on the ·5th day of January 1861, in which he devised and bequeathed all his real and personal property to his wife, for her own use for and during her natural life, and then provided as follows: "And after her death, it is my will, and I give and bequeath all my real and personal estate, and the same shall descend to my friend, Jeremiah Deturk, his heirs, executors, administrators, or assigns."

He also bequeathed various legacies to different persons, to be paid by the said Jeremiah Deturk.

In a latter clause of said will he ordered as follows: "It is my will, and I order that in case my friend Jeremiah Deturk

[Barnet *et al. v.* Deturk.]

dies without legal heirs, or in case his descendants die out, then all my property shall descend to my brothers and sisters, and their heirs."

Jeremiah Deturk took possession of the lands under the will, and is now in possession of the same; and these ejectments were brought by the brothers of Stephen to recover possession of them from him.

The court below (WOODWARD, P. J.), after stating the facts, charged as follows:—

"Upon these facts the court have had the advantage of the thorough research and the elaborate arguments of the counsel of the parties. As usual, however, in cases of this kind, the views entertained by counsel materially differ, and while the opinion of the court does not correspond precisely and in all respects with those of any one of the gentlemen concerned, this may be regarded as a necessary misfortune in view of the fact that no two of the counsel have precisely concurred in the application of the principles of the law to the questions that have been raised.

"The first inquiry is in reference to the nature of the estate vested by the will of Stephen Barnet, the father, in Stephen Barnet, the son. Unquestionably the first two clauses of the will which have been recited, if they had stood alone, would have vested an unconditional estate in fee simple. What has been the effect of the whole of the third clause recited, when taken together? Did it have the effect of cutting down the fee simple to a fee tail? Or did it leave the first estate a conditional fee simple, determinable upon a definite failure of issue at the death of the devisee, and thus make the limitation over to the brothers an executory devise? In the first instance, the property was, under this third clause, to 're-vest and descend to John, Daniel, and Samuel, or to their heirs,' in the event that Stephen 'should die without issue or children,' 'provided Stephen should not make sale' of it. The concluding part of the third clause, consisting of the provision for any surviving widow of Stephen at his death, causes the main difficulty in the construction of the limitation over. Is this provision to be taken as controlling the whole clause, and the rights of the three brothers of the devisee in case of his death without issue? It is contended that the language used clearly indicated an intention that the limitation should take effect on the death of Stephen; that it contemplated a definite failure of issue; and that the devise, therefore, was executory.

"It is too well settled to be subject of any question that a devise to one in fee, with a limitation over in the event of the death of the devisee 'without issue,' or 'on failure of issue,' 'for want of issue,' or 'without leaving issue,' makes the estate of the

[Barnet *et al. v.* Deturk.]

first taker an estate tail: Clark *v.* Baker, 3 S. & R. 470; Eichelberger *v.* Barnitz, 9 Watts 447; Vaughan *v.* Dickes, 8 Harris 509; Kay *v.* Scates, 1 Wright 31; Pierce *v.* Hakes, 11 Harris 231; Criley *v.* Chamberlain, 6 Casey 161; Doyle *v.* Mullady, 9 Casey 264; Braden *v.* Cannon, 1 Grant 60. In the last case it was said that " to effectuate the clear intention of testators, the words *heir, issue,* and *children* are construed interchangeable. The exception to the general rule is stated in Eichelberger *v.* Barnitz to be " when the time at which the devise over is to take effect, is expressly or impliedly limited to a particular period, within a life or lives in being, and twenty-one years after." Thus, in the case of Langley *v.* Heald, 7 W. & S. 96, the devise was to the testator's son, Passmore Heald, his heirs and assigns, but reserving the rents and profits to the use of his daughter Elizabeth until the son should arrive at the age of twenty-one. In case the son should die and leave no lawful issue, the land was then devised to the daughter if she should then be living, and to her heirs and assigns for ever; and if she should die and leave no lawful issue, then over. It was held that the first devise was of a fee, subject to be defeated by the death of Passmore without issue during the lifetime of Elizabeth; and that event not having occurred, his estate became absolute. So in the case of the will now under examination. Giving effect to all the clauses having a bearing on the question before the court, it would amount to a devise to Stephen Barnet and his heirs and assigns, but with a direction that, in the event of his death without children, one half of his property should go to his wife, if, *at that time,* his wife should survive, and the other half should go to his brothers. Then upon the death of the wife, her half was to go to the brothers also. But if, at the time of the first devisee's death, no wife *then* surviving him, he should leave no children, the brothers were to take the whole estate. The provision made for the widow would seem conclusively to establish the intention of the testator to fix the point of time when the limitations over should take effect, at the death of Stephen Barnet, the first devisee.

" Thus far, the clauses of the will have been considered apart from the right of alienation conferred upon the devisee. If it had not contained this authority to sell, the limitations would have been an executory devise, and upon the death of Stephen without children, his brothers would clearly have been entitled to the land. It may be, though this point is not considered, that if no attempt to exercise the authority had been made, and the estate stood at Stephen's death as it stood at the time of his succession under the will, the provision would have been unimportant. But Stephen in his lifetime actually conveyed the land. He did not, in the terms of the will, 'sell it,' for the fact is, the deed

was a formal one only, made for the purpose of unfettering the land from the limitations which the will imposed. What has been the effect of this conveyance?

"Under the construction the court are compelled to give to the terms of this will, the estate limited to the plaintiffs could not have been barred by any deed under the provisions of the Act of 1799. But no reason is apparent why the rules adopted by the courts in proceedings under that act should not apply to a case situated like the present one. Authority was given to tenants in tail 'to grant, bargain, sell, and convey lands.' This authority was held to warrant and sustain titles derived through conveyances the only consideration for which was the barring of the entail. Thus in Rancel *v.* Cresswell, 6 Casey 158, the tenant in tail made a deed for the purpose of barring the entail, and received the following day a reconveyance from his grantee. The estate was subsequently sold, and it was held that the entail was barred. In Pierce *v.* Hakes, 11 Harris 231, a deed had been made by the tenant and her husband in consideration of $1 as well as to bar the entail. The tenant died before the motion for the entry of the deed upon record was made in the court, and the Court of Common Pleas held that while, for that reason, it was inoperative for the purpose designed, yet the conveyance was valid to pass the estate of the husband as tenant by the curtesy. In entering the judgment in that case *non obstante veredicto*, Judge Conyngham said: 'The deed, though by the act of God it became inoperative, or rather was never fully operative as to the wife, would still be good to the extent of the husband's title.' In George *v.* Morgan, 4 Harris 95, there was a similar question. The deed had been made for the purpose of barring entail. It had not been recorded within six months as required by law, but it was still held to be good to convey the grantor's right of possession.

"In this will the testator directed the limitation over, 'provided said Stephen should not make sale of the aforesaid property—if he, the said Stephen, should sell the aforesaid property, he may grant and assign as he likes.' The manifest design of the testator was to give the land to his son if he chose to appropriate it by selling and conveying it. The authority conferred by the will stood in the place of a rule of law. The son made a deed, which was formal certainly, but which was an exercise of the power vested in him. Notwithstanding the immediate reconveyance, there was a period of time, however short, during which the title to the property was lodged in the grantee. Unless a more extended meaning is to be given to the word 'sell' in this will, than that which the courts have given to the words 'grant, bargain, sell, and convey lands,' contained in the Act of 1799, the act of

[Barnet *et al. v.* Deturk.]

Stephen Barnet divested the estate limited at his death to his brothers, the present plaintiffs.

"In this view of the case, it is unnecessary for the court to consider the effect upon Stephen Barnet's title, under the limitations of this will, of the power of alienation in fee, if he had done no act in the exercise of that power. The defendant's counsel have produced cases upon the subject entitled to respectful consideration, although they are not authorities furnishing a rule of decision in Pennsylvania.

"Affected as the rights of the plaintiffs were by the power of alienation contained in the will, the limitation in their favour was not of the nature of a strict, technical, executory devise. The conveyance by Stephen to Daniel, and by Daniel back to Stephen Barnet, vested in Stephen the fee simple of the land, and his own will transmitted a valid title to his devisee.

"Judgment is entered in favour of the defendant."

The case was thereupon removed into this court by the plaintiffs, who averred that the court below erred in holding,—

1. That the son's deed, though merely formal, was the exercise of a power vested in him.

2. That, notwithstanding the immediate reconveyance, there was a period of time, however short, during which the title to the property was lodged in the grantee.

3. That, affected as the rights of the plaintiffs were by the power of alienation contained in the will, the limitation in their favour was not of the nature of a strict technical executory devise.

4. That the conveyance by Stephen to Daniel, and by Daniel back to Stephen Barnet, vested in Stephen the fee simple of the land, and his own will transmitted a valid title to his devisee.

The case was argued by *A. F. Miller, John S. Richards*, and *Charles Davis*, for plaintiffs in error; and by *John Banks* and *D. Ermentrout*, for defendant in error.

The opinion of the court was delivered, May 29th 1862, by

READ, J.—Stephen Barnet, by his will dated the 27th of May 1826, gave and bequeathed to his son Stephen Barnet, his heirs and assigns for ever, two tracts of land therein described, "he the said Stephen Barnet paying the following sums of money out of the two described tracts of land unto my daughter Catherine and her heirs, as is herein mentioned and described." These sums of money were a legacy of 150*l.* to his daughter, payable in three annual payments of 50*l.* each, the first payment commencing and becoming due in one year after his decease, and so on in succession.

[Barnet *et al. v.* Deturk.]

This clearly gave the devisee a fee simple. Near the close of this will is the following:—"Item: It is my will, and I do ordain, if my son Stephen Barnet should die without issue or children, that the said messuage, tenements, or two tracts of land (bequeathed in the former part of this my will to him the said Stephen) shall revert and descend to my other sons, viz., John, Daniel, and Samuel, or to *their* heirs, and not to any of my daughters or their heirs (provided said Stephen should not make sale of the aforesaid property. *If he, the said Stephen, should sell the aforesaid property, he may grant and assign as he likes*). And further, it is my will if my son Stephen should die without issue, leaving a widow, said widow shall have the whole and entire use and privilege of and in the dwelling-house and barn of said Stephen Barnet, and shall be entitled to one-half of the interest or profits annually accruing on the aforesaid described messuage or tenement and tracts of land, as long as she remains unmarried, or in a state of widowhood, but no longer; and the remaining half thus accruing on the aforesaid land shall be equally divided amongst my sons John, Daniel, and Samuel, but my daughters and their heirs shall be utterly excluded and debarred from any of the aforesaid real estate or profit of my son Stephen."

It is not necessary to examine into the exact nature of the estate that would have been vested in Stephen Barnet if he and his wife had not made the conveyance of the 22d January 1834, but the true question is whether this conveyance and the deed-poll of the 22d May, in the same year, endorsed upon it and executed by the grantee and his wife, did not vest a fee simple in Stephen Barnet. Upon the face of these papers both considerations were valuable ones, being probably the full value of the property, but it is clearly proved that the considerations were merely nominal, and that both deeds were executed on the same day, the date of the deed-poll.

Now, taking together all the words in brackets, including the interlined ones in italics, it would seem clear that he has done exactly what the testator required, the effect of which was to give him the same estate as was given to him by the first item in the will. It is not denied that if he had sold it for a valuable consideration he might have purchased the farm adjoining, or at any future day have purchased the demised property itself. Such a construction of the clause, therefore, is reasonable, particularly after the settled interpretation placed upon the 1st section of Act of 18th January 1799, to facilitate the barring of estates tail, the words of which, if literally construed, might seem to imply that a simple conveyance and reconveyance was not within its scope. So also in cases before the Act of 1848, of a conveyance by husband and wife to a third person, and a

[Barnet *et al. v.* Deturk.]

reconveyance to the husband's wife without any consideration really passing on either side. Such transactions have uniformly been sustained, although the transmutation is of a wife's fee simple into a dower interest and of the husband's curtesy into an absolute fee simple. For these reasons we think that the court below were right. The learned judge in the court below having in his very able opinion discussed the whole case in detail, makes it unnecessary for us to say more.

Judgment in both cases affirmed.